

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

WILLIAM ALTON, )
)
           Appellant, )
)
vs. ) WD77617
)
MISSOURI DEPARTMENT OF ) Opinion filed:
PUBLIC SAFETY, )
)
           Respondent. )

**APPEAL FROM THE CIRCUIT COURT OF COLE COUNTY, MISSOURI**
**The Honorable Jon E. Beetem, Judge**

Before Division Three: Victor C. Howard, Presiding Judge,
James E. Welsh, Judge and Gary D. Witt, Judge

William Alton appeals the summary judgment in favor of the Missouri Department of

Public Safety in his action against it for age discrimination/failure to hire. He contends that a

genuine dispute of material fact existed as to whether he was an employment applicant under

section 213.055.1, RSMo 2000. The judgment is affirmed.

In March 1996, William Alton began working for the Department of Public Safety as a

special agent in the Division of Alcohol and Tobacco Control. In April 2009, Lafayette Lacy

was hired as the state supervisor for the Division. In May 2010, Mr. Lacy informed twenty-five

agent employees including Mr. Alton that they would be laid off effective June 15, 2010, as a

result of a budget cut. Mr. Alton, who was fifty-eight years old, believed he had two options: he

could either be laid off without pay or choose to take retirement. Mr. Alton chose to retire and requested that his termination date be delayed and that he be allowed to use accrued vacation time from June 15 to June 30 so that he would be eligible for full retirement benefits on July 1, 2010. The Department approved the request. On June 2, 2010, Mr. Alton sent Mr. Lacy a letter confirming his plan to retire:

> This is to confirm that I have applied for retirement effective July 1, 2010. I had no intention for retiring that soon, but felt compelled to retire due to the elimination of my job. Thank you for changing the termination date to June 30. I will take vacation from June 16, 2010, to June 30, 2010. Should the situation change prior to June 30th that would allow my continued employment with the Division; please let me know and I will cancel my retirement.

Mr. Alton retired effective July 1, 2010.

Meanwhile, prior to the effective date of the layoff, Mr. Lacy learned that the budget for five positions was restored. The five positions covered one agent in each of the five district offices—Kansas City, Jefferson City, St. Louis, Springfield, and Cape Girardeau. Mr. Lacy sent a letter to the most senior agents inviting them to bid on the five restored positions. Mr. Alton was not among the special agents invited to bid for the five restored positions. The restored positions were filled by the end of May 2010, and the five selected agents began work in the district offices on June 1.

Shortly thereafter, the agents staffing the Kansas City and St. Louis offices went on extended sick leave. Later, the special agent assigned to the Jefferson City office resigned to accept a job with the Department of Insurance. After the special agents assigned to the Kansas City and St. Louis offices exhausted their twelve weeks of FMLA leave, both chose to retire. After the remaining agents transferred to different offices, Mr. Lacy needed to fill agent vacancies in Kansas City, St. Louis, and Cape Girardeau offices. He contacted former special agents who lived near each of the district offices and asked whether they wanted to come back to

2

work for the Division in that office. Specifically, he contacted Charles Bidding (age 51), who lived in St. Joseph, regarding the Kansas City position; LaMont Mitchell (age 41), who lived in St. Louis County, regarding the St. Louis position; and Edward Widenbenner (age 47), who lived in Farmington, regarding the Cape Girardeau position. Mr. Alton was not called or asked to apply. On September 20, 2010, the Division received written applications from the three agents contacted by Mr. Lacy. All three were rehired as special agents in October 2010. On October 15, 2010, after learning of the rehire of agents Bidding, Mitchell, and Widenbenner, Mr. Alton emailed Mr. Lacy stating, "As you know, I had no intention of retiring from the Division on July 1, 2010, had I not been laid off. This in part is to confirm my request to be immediately reinstated as a Special Agent." Mr. Lacy did not respond to Mr. Alton's email.

Mr. Alton subsequently brought the present action under the Missouri Human Rights Act (MHRA) for age discrimination/failure to recall. He alleged that the Department discriminated against him based on his age when it hired LaMont Mitchell, a younger person, without notifying Alton that the position was available or offering him an opportunity to apply. He further alleged that the Division had a policy and practice of rehiring or recalling employees with the most seniority, and the Division deviated from that policy by rehiring Mr. Mitchell, who was least senior and one of the youngest agents in the Division. Mr. Alton did not allege discrimination in the elimination of his position in June 2010, in not being invited to bid on the five restored positions in May 2010, or in the October 2010 rehiring of Mr. Bidding and Mr. Widenbenner, who were younger but more senior than him.

The Department moved for summary judgment arguing that Mr. Alton was not an employee or employment applicant of the Division under section 213.055.1 at the time of the October 2010 hiring.

3

Following argument on the motion, the trial court entered summary judgment in favor of the Department. It found Mr. Alton was not an employee or an employment applicant of the Department at the time of the alleged discriminatory actions. Specifically, it found that while Mr. Alton's correspondence indicated a desire to be called back to work if positions became available, it was limited by its own terms to availability prior to June 30 and the decisions to hire a person younger than Mr. Alton was not made before June 30. This appeal by Mr. Alton followed.

In his sole point on appeal, Mr. Alton contends that the trial court erred in granting summary judgment in favor of the Department because a genuine dispute of material fact remained as to whether he was a potential applicant for recall/re-hire from layoff such that he was entitled to the protections of the MHRA.

Appellate review of the grant of summary judgment is *de novo*. *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment will be upheld on appeal if the movant is entitled to judgment as a matter of law and no genuine issues of material fact exist. *Id.* at 3**77**. The record is reviewed in the light most favorable to the party against whom judgment was entered, according that party all reasonable inferences that may be drawn from the record. *Id.* at 376. Facts contained in affidavits or otherwise in support of a party's motion are accepted as true unless contradicted by the non-moving party's response to the summary judgment motion. *Id.*

A defending party may establish a right to judgment as a matter of law by showing any one of the following: (1) facts that negate any one of the elements of the claimant's cause of action, (2) the non-movant, after an adequate period of discovery, has not and will not be able to produce evidence sufficient to allow the trier of fact to find the existence of any one of the

claimant's elements, or (3) there is no genuine dispute as to the existence of each of the facts necessary to support the movant's properly-pleaded affirmative defense. *Id.* at 381.

Once the movant has established a right to judgment as a matter of law, the non-movant must demonstrate that one or more of the material facts asserted by the movant as not in dispute is, in fact, genuinely disputed. *Id.* The non-moving party may not rely on mere allegations and denials of the pleadings, but must use affidavits, depositions, answers to interrogatories, or admissions on file to demonstrate the existence of a genuine issue for trial. *Id.*

As in any summary judgment matter, review of summary judgment in the context of a MHRA employment discrimination claim must determine whether the record shows two plausible, but contradictory, accounts of essential facts and the genuine issue in the case is real, not merely argumentative, imaginary, or frivolous. *Daugherty v. City of Maryland Heights*, 231 S.W.3d 814, 820 (Mo. banc 2007). "If the parties disagree on the legal effect and consequences of the facts, and not the relevant facts themselves, there is no genuine dispute of facts precluding summary judgment." *Medley v. Valentine Radford Communications, Inc.*, 173 S.W.3d 315, 319 (Mo. App. W.D. 2005).

In deciding a case under the MHRA, courts are guided by both Missouri law and federal employment discrimination case law that is consistent with Missouri law. *Daugherty v. City of Maryland Heights,* 231 S.W.3d 814, 818 (Mo. banc 2007). The MHRA prohibits unlawful employment practices on the basis of race, color, religion, national origin, sex, ancestry, age, or disability. *Howard v. City of Kansas City*, 332 S.W.3d 772, 779 (Mo. banc 2011). Specifically, section 213.055, RSMo 2000, is a remedial prohibition against discrimination in the employment context. *Id.* It provides:

1. It shall be an unlawful employment practice:

(1) For an employer, because of the race, color, religion, national origin, sex, ancestry, age or disability of any individual:

(a) To fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, national origin, sex, ancestry, age or disability;

(b) To limit, segregate, or classify his employees or his employment applicants in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, national origin, sex, ancestry, age or disability.

§ 213.055.1. "A plaintiff can prove discrimination by showing age or any protected characteristics was a contributing factor for the employment action regardless if other factors also exist." *Hurst v. Kansas City, Missouri School Dist.*, 437 S.W.3d 327, 39 (Mo. App. W.D. 2014)(internal quotes and citation omitted).

Protection under section 213.055.1 requires an employer/employee relationship. *Id.*; *Sloan v. Bankers Life & Cas. Co.*, 1 S.W.3d 555, 562 (Mo. App. W.D. 1999). *See also Coleman v. Carnahan*, 312 S.W.3d 377, 380 (Mo. App. E.D. 2010)(plaintiffs' MHRA employment discrimination complaint defeated because they "do not allege any potential or actual employer/employee relationship between the parties."). "The MHRA defines 'employer' to include 'the state, or any political or civil subdivision thereof….'" *Howard*, 332 S.W.3d at 779 (quoting § 213.010(7)). It does not, however, define "employee" or "employment applicant." *Id.* The Missouri Supreme Court recently defined the word "employee" for purposes of the MHRA by looking at its plain and ordinary meaning. *Id.* at 780. It explained, "The word 'employee' is commonly defined as 'one employed by another, usually in a position below the executive level and usually for wages,' as well as 'any worker who is under wages or salary to an employer and who is not excluded by agreement from consideration as such a worker.'" *Id.*

6

(quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 743 (1993)). The Court further noted that the term "employee applicant" does not have a dictionary definition. *Id.*

Alton does not dispute that he was not an employee of the Department at the time of the alleged discriminatory actions. Rather, he claims that material facts were in dispute regarding whether he was an employee applicant. Typically, to establish a claim for discriminatory failure to hire, the plaintiff must show that "'he applied and was qualified for a job for which the employer was seeking applicants.'" *Green v. City of St. Louis*, 507 F.3d 662, 666 (8th Cir. 2007)(quoting *Chambers v. Wynne Sch. Dist.*, 909 F.2d 1214, 1216 (8th Cir. 1990)). However, a formal application may be excused where the plaintiff "'made every reasonable effort to convey [his] interest in the job to the employer.'" *Jackson v. United States Parcel Serv., Inc.*, 643 F.3d 1081, 1086 (8th Cir. 2011)(quoting *Chambers*, 909 F.2d at 1217)). *See Paxton v. Union Nat'l Bank*, 688 F.2d 552, 568 (8th Cir. 1982)(where vacancy not posted and plaintiff did not hear about it from any other source until after position was filled, his expression of desire to advance in specific department of bank was sufficient for application). Additionally, a plaintiff may be excused from making a formal application where the employer had "'some reason or duty to consider him for the post.'" *Green*, 507 F.3d 662, 667 (quoting *Kehoe v. Anheuser Busch, Inc.*, 96 F.3d 1095, 1105 n.13 (8th Cir. 1996)(where supervisors knew they were going to eliminate plaintiff's position at the same time they were interviewing candidates for an open position and plaintiff did not know he was going to be fired until after other opening had already been filled, application requirement was excused)).

The following facts were undisputed. Mr. Alton's position was to be eliminated effective June 15, 2010, due to budget cuts, and he chose to retire on July 1, 2010, rather than to be laid off without pay. Mr. Alton had no intention of retiring in July 2010 but only did so because of

the elimination of his job. In a June 2, 2010 letter to Mr. Lacy, Mr. Alton expressed his interest in cancelling his retirement if positions became available before June 30, 2010. Five positions were restored before June 30, 2010, and those positions were filled at the end of May/beginning of June 2010 with the most senior agents. Mr. Alton did not allege discrimination in the filling of the positions. Of the five restored positions, three became vacant after two agents exhausted twelve-weeks of FMLA leave and retired and another resigned to accept another job. Mr. Lacy contacted Mr. Bidding, Mr. Mitchell, and Mr. Widenbenner, and on September 20, 2010, the Division received their written applications. All three were rehired as special agents in October 2010. After learning of the hiring, Mr. Alton emailed Mr. Lace on October 15, 2010, asking to be reinstated as a special agent.

These undisputed facts showed that Mr. Alton did not apply for any of the positions filled during the October 2010 hiring. Furthermore, he did not make every reasonable effort to convey his interest in the jobs and the Division had no reason or duty to consider him for a position at that time. By its own terms, Mr. Alton's June 2, 2010 letter limited his interest in positions that became available before June 30, 2010. Mr. Alton did not contact the Division or Mr. Lacy about a position again until his October 15, 2010 email to Mr. Lacy after Mr. Mitchell was rehired.

Mr. Alton argued that the manner in which the positions were filled and recent history and evidence of age discrimination by Mr. Lacy supported a plausible inference that he was an employment applicant requiring the issue to be submitted to a jury. In making this argument, Mr. Alton relied on evidence from a previous age discrimination lawsuit by two special agents that were laid off in 2009. The two agents were the most senior agents in the Division when they were laid off. In their lawsuit, which resulted in a preliminary injunction against the Department,

evidence was offered that the Department had a tradition of carrying out budget-driven layoffs by inverse order of hire (last hired, first fired) and that Mr. Lacy had stated to a district supervisor during the 2009 layoff his desire that older agents should retire so younger agents could be retained. While these facts were undisputed, they were not material to the issue in this appeal—the threshold question of whether Mr. Alton was an employment applicant. Rather, such facts would tend to be relevant to whether Mr. Alton's age was a contributing factor in the failure to hire. Because the undisputed facts show that Alton did not express an interest in returning to work for the Department after he retired until after the October 2010 rehiring, he was not an employment applicant entitled to protections under the MHRA. The trial court properly granted summary judgment in favor of the Department. The point is denied.

The judgment is affirmed.


_____

VICTOR C. HOWARD, JUDGE

All concur.

9